**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ST. MARY'S REGIONAL MEDICAL CENTER
1808 W Main St.
Russellville, AR 72801

NORTH ALABAMA MEDICAL CENTER fka
ELIZA COFFEE MEMORIAL HOSPITAL
1701 Veterans Dr.
Florence, AL 35630

ANDALUSIA HEALTH fka COMMUNITY
HOSPITAL OF ANDALUSIA
849 S 3 Notch St.
Andalusia, AL 36420

VAUGHAN REGIONAL MEDICAL CENTER
LLC
1015 Medical Center Parkway
Selma, AL 36701

NORTH ALABAMA SHOALS HOSPITAL fka           CASE NO:   1:23-cv-1594
SHOALS HOSPITAL
201 W Avalon Ave.
Muscle Shoals, AL 35661

CANYON VISTA MEDICAL CENTER fka
RCHP – SIERRA VISTA INC.
5700 E. Highway 90
Sierra Vista, AZ   85635

HAVASU REGIONAL MEDICAL CENTER
101 Civic Center Ln.
Lake Havasu City, AZ 86403

VALLEY VIEW MEDICAL CENTER fka PHC-
FORT MOHAVE INC.
5330 South Highway 95
Fort Mohave, AZ   86426

NATIONAL PARK MEDICAL CENTER
1910 Malvern Ave.
Hot Springs, AR 71901

SALINE MEMORIAL HOSPITAL
1 Medical Park Dr.
Benton, AR 72015

CENTURA – ST. ELIZABETH HOSPITAL fka
PHC FORT MORGAN INC.
1000 Lincoln Street
Fort Morgan, CO  80701

ST. FRANCIS – EMORY HEALTHCARE fka
ST. FRANCIS HEALTH LLC
2122 Manchester Expy.
Columbus, GA 31904

ST. JOSEPH REGIONAL MEDICAL CENTER
fka ST. JOSEPH HOSPITAL LLC
415 6th St.
Lewiston, ID 83501

CLARK MEMORIAL HEALTH fka RHN
CLARK MEMORIAL HOSPITAL LLC
1220 Missouri Avenue
Jeffersonville, IN 47130

OTTUMWA REGIONAL MEDICAL CENTER
1001 E Pennsylvania Ave.
Ottumwa, IA 52501

CENTURA ST. CATHERINE HOSPITAL –
DODGE CITY fka DODGE HEALTHCARE
GROUP LLC
3001 Avenue A
Dodge City, KS  67801

MEADOWVIEW REGIONAL MEDICAL
CENTER
989 Medical Park Drive
Maysville, KY  41056

SPRING VIEW HOSPITAL LLC
320 Loretto Road
Lebanon, KY 40033

BOURBON COMMUNITY HOSPITAL
9 Linville Dr.
Paris, KY 40361

FLEMING COUNTY HOSPITAL fka FLEMING
MEDICAL CENTER LLC
55 Foundation Drive
Flemingsburg, KY 41041

LOGAN MEMORIAL HOSPITAL LLC
1625 Nashville Road
Russellville, KY  42276

CLARK REGIONAL MEDICAL CENTER fka
KENTUCKY HOSPITAL LLC
175 Hospital Drive
Winchester, KY  40391

GEORGETOWN COMMUNITY HOSPITAL
LLC
1140 Lexington Road
Georgetown, KY  40324

JACKSON PURCHASE MEDICAL CENTER fka
PINELAKE REGIONAL HOSPITAL LLC
1099 Medical Center Circle
Mayfield, KY  42066

LAKE CUMBERLAND REGIONAL HOSPITAL
LLC
305 Langdon Street
Somerset, KY  42503

OCHSNER – ST. MARY fka PHC-MORGAN
CITY, L.P.
1125 Marguerite St.
Morgan City, LA  70380

UP HEALTH SYSTEM MARQUETTE fka DLP
MARQUETTE GENERAL HOSPITAL LLC
850 W. Baraga Ave.
Marquette, MI  49855

UP HEALTH SYSTEM – PORTAGE fka
PORTAGE HOSPITAL LLC
500 Campus Drive
Hancock, MI  49930

BOLIVAR MEDICAL CENTER fka PHC-
CLEVELAND INC.
901 Highway 8 East
Cleveland, MS  38732

COMMUNITY MEDICAL CENTER
2827 Fort Missoula Rd.
Missoula, MT 59804

NORTHEAST NEVADA REGIONAL
HOSPITAL fka PHC INC. – ELKO
2001 Errecart Blvd.
Elko, NV 89801

MEMORIAL MEDICAL CENTER fka PHC –
LAS CRUCES INC.
2450 South Telshor Blvd.
Las Cruces, NM  88011

LOS ALAMOS MEDICAL CENTER fka PHC –
LOS ALAMOS INC.
3917 West Road
Los Alamos, NM  87544

RUTHERFORD REGIONAL HEALTH SYSTEM
fka DLP RUTHERFORD REGIONAL HEALTH
288 S. Ridgecrest St.
Rutherfordton, NC  28139

HARRIS REGIONAL HOSPITAL fka
DLP HARRIS REGIONAL HOSPITAL LLC
68 Hospital Road
Sylva, NC  28779

CENTRAL CAROLINA HOSPITAL fka DLP
CENTRAL CAROLINA MEDICAL CENTER
1135 Carthage Street
Sanford, NC  27330

DLP FRYE REGIONAL MEDICAL CENTER
420 North Center Street
Hickory, NC  28601

DLP WILSON MEDICAL CENTER LLC
1705 Tarboro Street Southwest
Wilson, NC  27893

DLP MARIA PARHAM MEDICAL CENTER
LLC
566 Ruin Creek Road
Henderson, NC  27536

DLP PERSON MEMORIAL HOSPITAL INC.
LLC
615 Ridge Road
Roxboro, NC  27573

DLP HAYWOOD REGIONAL MEDICAL
CENTER LLC
262 Leroy George Drive
Clyde, NC  28721

CLINTON MEMORIAL HOSPITAL
610 W. Main St.
Wilmington, OH  45177

SOUTHWESTERN MEDICAL CENTER
5602 SW Lee Blvd.
Lawton, OK  73505

WILLAMETTE VALLEY MEDICAL CENTER
2700 SE Stratus Ave.
McMinnville, OR  97128

CONEMAUGH NASON MEDICAL CENTER
fka NASON MEDICAL CENTER LLC
105 Nason Drive
Roaring Spring, PA 16673

CONEMAUGH MEMORIAL MEDICAL
CENTER fka DLP CONNEMAUGH
MEMORIAL MEDICAL CENTER LLC
1086 Franklin St.
Johnstown, PA  15905

CONEMAUGH MINERS MEDICAL CENTER
fka DLP CONNEMAUGH MINERS MEDICAL
CENTER, LLC
290 Haida Ave.
Hastings, PA  16646

CAROLINA PINES REG MED CTR
1304 W. Bobo Newsom Hwy.
Hartsville, SC  29550

MUSC HEALTH MEDICAL CENTER
DOWNTOWN fka
PROVIDENCE HOSPITAL LLC
2435 Forest Drive
Columbia, SC  29204

MUSC HEALTH KERSHAW MEDICAL
CENTER fka KERSHAW HEALTH
1315 Roberts Street
Camden, SC  29020

SUMNER REGIONAL MEDICAL CENTER
LLC
555 Hartsville Pike
Gallatin, TN 37066

SOUTHERN TENNESSEE REGIONAL
HEALTH SYSTEM PULASKI fka HILLSIDE
HOSPITAL LLC
1265 East College Street
Pulaski, TN 38478

SOUTHERN TENNESSEE REGIONAL
HEALTH SYSTEM – WINCHESTER fka
SOUTHERN TENNESSEE MEDICAL CENTER
LLC
185 Hospital Road
Winchester, TN  37398

STARR REGIONAL MEDICAL CENTER –
ATHENS fka ATHENS REGIONAL MEDICAL
CENTER
1114 W. Madison Ave.
Athens, TN  37303

SOUTHERN TENNESSEE HEALTH SYSTEM
LAWRENCEBURG fka CROCKETT HOSPITAL
LLC
1607 S. Locust Ave.
Lawrenceburg, TN  38464

LIVINGSTON REGIONAL HOSPITAL LLC
315 Oak St.
Livingston, TN  38570

PARIS REGIONAL HEALTH fka PARIS
REGIONAL MEDICAL CENTER
865 Deshong Dr.
Paris, TX  75460

PARKVIEW REGIONAL HOSPITAL fka
MEXIA PRINCIPAL HEALTHCARE LIMITED
514 S. Bonham St.
Mexia, Texas  76667

PALESTINE REGIONAL MEDICAL CENTER
fka PALESTINE PRINCIPAL HEALTHCARE
2900 South Loop 256
Palestine, TX  75801

ENNIS REGIONAL MEDICAL CENTER fka
PRHC-ENNIS LP
2201 West Lampasas Street
Ennis, TX  75119

CASTLEVIEW HOSPITAL LLC
300 North Hospital Drive
Price, UT  84501

ASHLEY REGIONAL MEDICAL CENTER
150 West 100 North
Vernal, UT  84078

FAUQUIER HEALTH fka FAUQUIER
MEDICAL CENTER LLC
500 Hospital Drive
Warrenton, VA  20186

CLINCH VALLEY MEDICAL CENTER INC.
6801 Gov. G.C. Peery Hwy.
Richlands, VA  24641

SOVAH HEALTH – DANVILLE fka
DANVILLE REGIONAL MEDICAL CENTER
142 South Main Street
Danville, VA  24541

WYTHE COUNTY COMMUNITY HOSPITAL,
LLC
600 West Ridge Road
Wytheville, VA  24382

DLP TWIN COUNTY REGIONAL
HEALTHCARE LLC
200 Hospital Drive
Galax, VA  24333

TRIOS HEALTH
900 S. Auburn St.
Kennewick, WA  99336

MULTICARE CAPITAL MEDICAL CENTER
fka CAPITAL MEDICAL CENTER
3900 Capital Mall Dr. SW
Olympia, WA  98502

LOGAN REGIONAL MEDICAL CENTER
20 Hospital Drive
Logan, WV  25601

RALEIGH GENERAL HOSPITAL LLC
1710 Harper Road
Beckley, WV  25801

WATERTOWN MEDICAL CENTER LLC
125 Hospital Drive
Watertown, WI  53098

SAGEWEST RIVERTON fka RIVERTON
MEMORIAL HOSPITAL LLC
2100 West Sunset Drive
Riverton, WY  82501

LOVELACE MEDICAL CENTER
DOWNTOWN
601 Dr Martin Luther King Jr Ave NE
Albuquerque, New Mexico 87102

LOVELACE WESTSIDE HOSPITAL
10501 Golf Course Rd NW
Albuquerque, New Mexico 87114

LOVELACE WOMEN'S HOSPITAL
4701 Montgomery Boulevard Northeast
Albuquerque, NM 87109

LOVELACE REGIONAL HOSPITAL
ROSWELL
117 East 19th Street
Roswell, NM 88201

BAILEY MEDICAL CENTER
10502 N 110th E Ave.
Owasso, OK 74055

HILLCREST HOSPITAL – PRYOR
111 N. Bailey St.
Pryor, OK 74361

HILLCREST HOSPITAL CLAREMORE
1202 North Muskogee Place
Claremore, OK 74017

HILLCREST HOSPITAL CUSHING
1027 East Cherry Street
Cushing, OK 74023

HILLCREST HOSPITAL HENRYETTA
2401 West Main Street
Henryetta, OK 74437

HILLCREST MEDICAL CENTER
1120 South Utica
Tulsa, OK 74104

HILLCREST HOSPITAL SOUTH
8801 South 101st East Avenue
Tulsa, OK 74133

TULSA SPINE & SPECIALTY HOSPITAL
6901 South Olympia Avenue
Tulsa, OK 74132

BAPTIST ST. ANTHONY'S HOSPITAL
1600 Wallace Boulevard
Amarillo, TX 79106

QUAIL CREEK SURGICAL HOSPITAL fka
PHYSICIANS SURGICAL HOSPITAL
6819 Plum Creek Drive
Amarillo, TX 79124

ASCENSION SACRED HEART BAY fka
BAY MEDICAL CENTER – SACRED HEART
615 N. Bonita Ave.
Panama City, FL  32401

HACKENSACK MERIDIAN
MOUNTAINSIDE MEDICAL CENTER fka
HACKENSACK UMC – MOUNTAINSIDE
1 Bay Ave, Montclair
NJ 07042

HACKENSACK MERIDIAN PASCACK
VALLEY MEDICAL CENTER fka
HACKENSACK UMC – PASCACK VALLEY
250 Old Hook Rd.
Westwood, NJ 07675

PORTNEUF MEDICAL CENTER
777 Hospital Way
Pocatello, ID 83201

SETON MEDICAL CENTER HARKER
HEIGHTS
850 W Central Texas Expy.
Harker Heights, TX 76548

THE UNIVERSITY OF KANSAS ST. FRANCIS
CAMPUS
1700 SW 7th St.
Topeka, KS 66606

UT HEALTH TYLER
1000 S. Beckham Ave.
Tyler, TX  75701

UT HEALTH JACKSONVILLE
501 S Ragsdale St.
Jacksonville, TX 75766

UT HEALTH CARTHAGE
409 Cottage Rd.
Carthage, TX 75633

UT HEALTH ATHENS
2000 S Palestine St.
Athens, TX 75751

UT HEALTH HENDERSON
300 Wilson St.
Henderson, TX 75652

UT HEALTH NORTH CAMPUS TYLER
11937 US-271
Tyler, TX 75708

GADSDEN REGIONAL MEDICAL CENTER
1007 Goodyear Ave.
Gadsden, AL  35903

MEDICAL CENTER ENTERPRISE
400 North Edwards Street
Enterprise, AL  36330

FLOWERS HOSPITAL
4370 West Main Street
Dothan, AL 36305

SOUTH BALDWIN RMC
1613 North McKenzie Street
Foley, AL 36535

GRANDVIEW MEDICAL CENTER
3690 Grandview Pkwy.
Birmingham, AL  35243

CRESTWOOD MEDICAL CENTER
One Hospital Drive
Huntsville, AL 35801

MAT-SU REGIONAL MEDICAL CENTER
2500 South Woodworth Loop
Palmer, AK 99645

NORTHWEST MEDICAL CENTER
6200 North La Cholla Boulevard
Tucson, AZ 85741

WESTERN ARIZONA RMC
2735 Silver Creek Road
Bullhead City, AZ 86442

ORO VALLEY HOSPITAL fka NORTHWEST
MEDICAL CENTER ORO VALLEY
1551 E. Tangerine Rd.
Oro Valley, AZ  85755

SILOAM SPRINGS MEMORIAL HOSPITAL
603 North Progress Avenue
Siloam Springs, AR 72761

NORTHWEST MEDICAL CENTER –
SPRINGDALE fka NORTHWEST MEDICAL
CENTER
609 West Maple Avenue
Springdale, AR 72764

MEDICAL CENTER OF SOUTH ARKANSAS
700 West Grove Street
El Dorado, AR 71730

NORTHWEST PHYSICIANS SPECIALTY
HOSP.
3873 Parkview Dr.
Fayetteville, AR  72703

ADVENTHEALTH LAKE WALES fka LAKE
WALES MEDICAL CENTER
410 South 11th Street
Lake Wales, FL 33853

NORTH OKALOOSA MEDICAL CENTER
151 East Redstone Avenue
Crestview, FL 32539

NORTHWEST HEALTH – LA PORTE fka
LAPORTE HOSPITAL
1331 State St.
La Porte, IN  46350

LUTHERAN HOSPITAL
7950 West Jefferson Boulevard
Fort Wayne, IN 46804

NORTHWEST HEALTH – PORTER fka
PORTER VALPARAISO HOSPITAL
85 East US Highway 6
Valparaiso, IN 46383

LUTHERAN DOWNTOWN HOSPITAL fka ST.
JOSEPH'S HOSPITAL
702 Van Buren St.
Fort Wayne, IN  46802

BLUFFTON REGIONAL MEDICAL CENTER
303 South Main Street
Bluffton, IN 46714

NORTHWEST HEALTH – STARKE fka
STARKE HOSPITAL
102 E. Culver Rd.
Knox, IN  46534

LUTHERAN KOSCIUSKO HOSPITAL fka
KOSCIUSKO COMMUNITY HOSPITAL
2101 East DuBois Drive
Warsaw, IN 46580

DUPONT HOSPITAL
2520 East Dupont Road
Fort Wayne, IN 46825

THE ORTHOPEDIC HOSPITAL
7952 West Jefferson Boulevard
Fort Wayne, IN 46804

NORTHERN LOUISIANA MEDICAL CENTER
401 East Vaughn Avenue
Ruston, LA 71270

MERIT HEALTH RIVER REGION fka RIVER
REGION HEALTH SYSTEM
2100 Highway 61 North
Vicksburg, MS 39183

MERIT HEALTH WESLEY fka WESLEY
MEDICAL CENTER
5001 Hardy Street
Hattiesburg, MS 39402

NORTHEAST REGIONAL MEDICAL CENTER
fka NORTHEAST REGIONAL
315 South Osteopathy
Kirksville, MO 63501

MOBERLY RMC
1515 Union Avenue
Moberly, MO 65270

SALEM MEDICAL CENTER – INSPIRA
HEALTH fka MEMORIAL HOSPITAL OF
SALEM
310 Woodstown Road
Salem, NJ 08079

EASTERN NEW MEXICO MEDICAL CTR
405 West Country Club Road
Roswell, NM 88201

CARLSBAD MEDICAL CENTER
2430 West Pierce Street
Carlsbad, NM 88220

COVENANT HEALTH HOBBS HOSPITAL fka
LEA REGIONAL MEDICAL CENTER
5419 North Lovington Highway
Hobbs, NM 88240

MOUNTAINVIEW REGIONAL MEDICAL
CENTER
4311 East Lohman Avenue
Las Cruces, NM 88011

ALLIANCEHEALTH WOODWARD fka
WOODWARD REGIONAL HOSPITAL
900 17th Street
Woodward, OK 73801

ALLIANCEHEALTH PONCA CITY fka PONCA
CITY MEDICAL CENTER
1900 North 14th Street
Ponca City, OK 74601

BERWICK HOSPITAL CENTER
701 East 16th Street
Berwick, PA 18603

COMMONWEALTH HEALTH – MOSES
TAYLOR HOSPITAL fka MOSES TAYLOR
700 Quincy Avenue
Scranton, PA 18510

COMMONWEALTH HEALTH - WILKES-
BARRE GENERAL HOSPITAL fka WILKES-
BARRE
575 North River Street
Wilkes-Barre, PA 18764

TYLER MEMORIAL HOSPITAL
5950 State Road 6 West
Tunkhannock, PA 18657

COMMONWEALTH HEALTH – REGIONAL
HOSPITAL OF SCRANTON fka REGIONAL
HOSPITAL OF SCRANTON
746 Jefferson Avenue
Scranton, PA 18510

MUSC HEALTH LANCASTER MEDICAL
CENTER fka SPRINGS MEMORIAL
HOSPITAL
800 West Meeting Street
Lancaster, SC 29720

MUSC HEALTH MARION MEDICAL CENTER
fka MARION REGIONAL HOSPITAL
2829 East Highway 76
Mullins, SC 29574

MUSC HEALTH FLORENCE MEDICAL
CENTER fka CAROLINAS HOSPITAL
SYSTEM
805 Pamplico Highway
Florence, SC 29505

TENNOVA HEALTHCARE – CLARKSVILLE
fka GATEWAY MEDICAL CENTER
651 Dunlop Lane
Clarksville, TN 37040

VANDERBILT BEDFORD HOSPITAL F/K/A
TENNOVA HEALTHCARE SHELBYVILLE fka
BEDFORD COUNTY- SHELBYVILLE-
HERITAGE
2835 US-231
Shelbyville, TN  37160

TENNOVA HEALTHCARE – CLEVELAND fka
SKYRIDGE MEDICAL CTR. EAST & WEST
2305 Chambliss Ave. NW
Cleveland, TN 37311

LAREDO MEDICAL CENTER
1700 East Saunders Street
Laredo, TX 78041

DETAR HEALTHCARE SYSTEM
506 East San Antonio Street
Victoria, TX 77901

HILL REGIONAL HOSPITAL
101 Circle Drive
Hillsboro, TX 76645

ST. JOSEPH HEALTH COLLEGE STATION
HOSPITAL fka COLLEGE STATION
MEDICAL CENTER
1604 Rock Prairie Road
College Station, TX 77845

SHANNON SOUTH fka SAN ANGELO
COMMUNITY MEDICAL CENTER
3501 Knickerbocker Road
San Angelo, TX 76904

NAVARRO REGIONAL HOSPITAL
3201 West Highway 22
Corsicana, TX 75110

WOODLAND HEIGHTS MEDICAL CENTER
505 South John Redditt Drive
Lufkin, TX 75904

HENDRICK MEDICAL CENTER SOUTH fka
ABILENE REGIONAL MEDICAL CENTER
6250 US Highway 83
Abilene, TX 79606

HENDRICK MEDICAL CENTER
BROWNWOOD fka BROWNWOOD
REGIONAL MEDICAL CENTER
1501 Burnet Drive
Brownwood, TX 76801

LAKE GRANBURY MEDICAL CENTER fka
LAKE GRANBURY HOSPITAL
1310 Paluxy Road
Granbury, TX 76048

LONGVIEW REGIONAL MEDICAL CENTER
2901 North Fourth Street
Longview, TX 75605

BON SECOURS – SOUTHSIDE MEDICAL
CENTER fka SOUTHSIDE RMC
200 Medical Park Blvd.
Petersburg, VA 23805

BON SECOURS – SOUTHHAMPTON
MEDICAL CENTER fka SOUTHAMPTON
MEMORIAL HOSPITAL
100 Fairview Drive
Franklin, VA 23851

BON SECOURS – SOUTHERN VIRGINIA
MEDICAL CENTER fka SOUTHERN
VIRGINIA RMC
727 North Main Street
Emporia, VA 23847

CAMC GREENBRIER VALLEY MEDICAL
CENTER fka GREENBRIER VALLEY
MEDICAL CENTER
1320 Maplewood Avenue
Ronceverte, WV 24970

BLUEFIELD REGIONAL MEDICAL
CENTER
500 Cherry Street
Bluefield, WV 24701

CEDAR PARK REGIONAL MEDICAL
CENTER
1401 Medical Parkway
Cedar Park, TX 78613

BAYFRONT HEALTH ST. PETERSBURG fka
BAYFRONT  MEDICAL CENTER
701 Sixth Street South
Saint Petersburg, FL  33701

SHOREPOINT HEALTH PUNTA GORDA fka
CHARLOTTE REGIONAL MEDICAL CENTER
809 E. Marion Ave.
Punta Gorda, FL  33950

SHOREPOINT HEALTH VENICE fka VENICE
REGIONAL MEDICAL CENTER
540 The Rialto
Venice, FL 34285

BRAVERA HEALTH BROOKSVILLE fka
BROOKSVILLE REGIONAL HOSPITAL
17240 Cortez Boulevard
Brooksville, FL 34601

SHOREPOINT HEALTH PORT CHARLOTTE
fka PEACE RIVER REGIONAL MEDICAL
CENTER
2500 Harbor Boulevard
Port Charlotte, FL  33952

SHANDS LAKESHORE REGIONAL MED CTR
368 Northeast Franklin Street
Lake City, FL 32055

SANTA ROSA MEDICAL CENTER
6002 Berryhill Road
Milton, FL 32570

ADVENTHEALTH HEART OF FLORIDA fka
HEART OF FLORIDA REGIONAL MEDICAL
CENTER
40100 United States Highway 27
Davenport, FL 33837

LOWER KEYS MEDICAL CENTER
5900 College Road
Key West, FL 33040

BRAVERA HEALTH SEVEN RIVERS fka
SEVEN RIVERS REGIONAL MEDICAL
CENTER
6201 North Suncoast Boulevard
Crystal River, FL 34428

PHYSICIANS REGIONAL MEDICAL CENTER
6101 Pine Ridge Road
Naples, FL 34119

ORLANDO HEALTH ST. CLOUD HOSPITAL
fka ST. CLOUD REGIONAL MEDICAL
CENTER
2906 17th Street
Saint Cloud, FL 34769

EAST GEORGIA REGIONAL MEDICAL
CENTER
1499 Fair Road
Statesboro, GA 30458

MERIT HEALTH BILOXI fka BILOXI
REGIONAL MEDICAL CENTER
150 Reynoir Street
Biloxi, MS 39530

MERIT HEALTH MADISON fka MADISON
REGIONAL MEDICAL CENTER
161 River Oaks Drive
Canton, MS 39046

MERIT HEALTH CENTRAL fka CENTRAL
MISSISSIPPI MEDICAL CENTER
1850 Chadwick Dr.
Jackson, MS  39204

MERIT HEALTH NATCHEZ fka MERIT
NATCHEZ
54 Seargent Prentiss Drive
Natchez, MS 39120

MERIT HEALTH RANKIN fka CROSSGATES
RIVER OAKS HOSPITAL
350 Crossgates Blvd.
Brandon, MS  39042

MERIT HEALTH WOMAN'S HOSPITAL fka
WOMAN'S HOSPITAL AT RIVER OAKS
1026 N. Flowood Dr.
Flowood, MS  39232

MERIT HEALTH RIVER OAKS fka RIVER
OAKS HOSPITAL
1030 River Oaks Drive
Flowood, MS 39232

POPLAR BLUFF REGIONAL MEDICAL
CENTER
3100 Oak Grove Road
Poplar Bluff, MO 63901

LAKE NORMAN REGIONAL MEDICAL
CENTER
171 Fairview Road
Mooresville, NC 28117

DAVIS REGIONAL MEDICAL CENTER
218 Old Mocksville Road
Statesville, NC 28625

ALLIANCEHEALTH DURANT fka MEDICAL
CENTER OF SOUTHEAST OKLAHOMA
1800 University Blvd.
Durant, OK  74701

ALLIANCEHEALTH CLINTON fka INTEGRIS
CLINTON
100 North 30th Street
Clinton, OK  73601

SSM HEALTH ST. ANTHONY HOSPITAL –
MIDWEST fka MIDWEST REGIONAL
MEDICAL CENTER
2825 Parklawn Drive
Midwest City, OK 73110

SSM HEALTH ST. ANTHONY HOSPITAL –
SHAWNEE, SEMINOLE CAMPUS fka
INTEGRIS SEMINOLE
2401 W. Wrangler Blvd.
Seminole, OK  74868

MUSC HEALTH CHESTER MEDICAL
CENTER fka CHESTER REGIONAL MEDICAL
CENTER
One Medical Park Drive
Chester, SC 29706

TENNOVA - LAFOLLETTE MEDICAL
CENTER
923 East Central Avenue
LaFollette, TN 37766

TENNOVA - JEFFERSON MEMORIAL
HOSPITAL
110 Hospital Drive
Jefferson City, TN 37760

TENNOVA – NORTH KNOXVILLE MEDICAL
CENTER fka TENNOVA - PHYSICIANS
REGIONAL MEDICAL CENTER
7565 Dannaher Drive
Powell, TN  37849

VANDERBILT TULLAHOMA –HARTON
HOSPITAL fka HARTON REGIONAL
MEDICAL CENTER
1801 North Jackson Street
Tullahoma, TN 37388

TENNOVA - NEWPORT MEDICAL CENTER
435 Second Street
Newport, TN 37821

VANDERBILT WILSON COUNTY HOSPITAL
fka UNIVERSITY MEDICAL CENTER
1411 West Baddour Parkway
Lebanon, TN 37087

DELTA HEALTH SYSTEM – NORTHWEST
REGIONAL fka MERIT HEALTH
NORTHWEST MISSISSIPPI
1970 Hospital Drive
Clarksdale, MS 38614

CHEROKEE MEDICAL CENTER fka MARY
BLACK – GAFFNEY
1530 North Limestone Street
Gaffney, SC 29340

SPARTANBURG MEDICAL CENTER – MARY
BLACK CAMPUS fka MARY BLACK-
SPARTANBURG
1700 Skylyn Drive
Spartanburg, SC 29307

TENNOVA LAKEWAY REGIONAL
HOSPITAL fka TENNOVA – LAKEWAY
726 McFarland Street
Morristown, TN 37814

BAPTIST HEALTH FORT SMITH fka SPARKS
HEALTH SYSTEM
1001 Towson Avenue
Fort Smith, AR 72901

BAPTIST HEALTH VAN BUREN fka SPARKS
– VAN BUREN
211 Crawford Memorial Drive
Van Buren, AR  72956

DEKALB REGIONAL MEDICAL CENTER
200 Medical Center Drive
Fort Payne, AL 35968

FORREST CITY MEDICAL CENTER
1601 Newcastle Road
Forrest City, AR 72335

HELENA RMC
1801 Martin Luther King Drive
Helena, AR 72342

WATSONVILLE COMMUNITY HOSPITAL
75 Nielson Street
Watsonville, CA 95076

BARSTOW COMMUNITY HOSPITAL
820 East Mountain View Street
Barstow, CA 92311

FANNIN REGIONAL HOSPITAL
2855 Old Highway 5, North
Blue Ridge, GA 30513

GALESBURG COTTAGE HOSPITAL
695 North Kellogg Street
Galesburg, IL 61401

VISTA MEDICAL CENTER EAST
1324 North Sheridan Road
Waukegan, IL 60085

METROSOUTH MEDICAL CENTER
12935 South Gregory Street
Blue Island, IL 60406

GATEWAY REGIONAL MEDICAL CENTER
2100 Madison Ave
Granite City, IL 62040

HEARTLAND REGIONAL MEDICAL CENTER
3333 W. DeYoung St.
Marion, IL 62959

CROSSROADS COMMUNITY HOSPITAL
8 Doctors Park Road
Mount Vernon, IL 62864

PAINTSVILLE ARH HOSPITAL fka PAUL B.
HALL REGIONAL MEDICAL CENTER
625 James S. Trimble Boulevard
Paintsville, KY 41240

THREE RIVERS MEDICAL CENTER
2485 Highway 644
Louisa, KY 41230

KENTUCKY RIVER MEDICAL CENTER
540 Jett Drive
Jackson, KY 41339

ALTA VISTA REGIONAL HOSPITAL
104 Legion Drive
Las Vegas, NM 87701

MARTIN GENERAL HOSPITAL
310 S McCaskey Rd.
Williamston, NC 27892

MCKENZIE-WILLAMETTE MEDICAL
CENTER
1460 G St.
Springfield, OR 97477

HENDERSON COUNTY COMMUNITY
HOSPITAL
200 W Church St.
Lexington, TN  38351

SCENIC MOUNTAIN MEDICAL CENTER
1601 W 11th Pl.
Big Spring, TX 79720

MOUNTAIN WEST MEDICAL CENTER
2055 N Main St.
Tooele, UT 84074

EVANSTON REGIONAL HOSPITAL fka
EVANSTON HOSPITAL
190 Arrowhead Drive
Evanston, WY  82930

JOHN D. ARCHBOLD MEMORIAL HOSPITAL
915 Gordon Ave.
Thomasville, GA 31792

ARCHBOLD GRADY GENERAL HOSPITAL
fka GRADY MEMORIAL HOSPITAL
1155 5th St SE
Cairo, GA 39828

        Plaintiffs,

v.

XAVIER BECERRA, Secretary
United States Department of Health and
Human Services
200 Independence Avenue, S.W.
Washington, D.C.  20201,

        Defendant.

## COMPLAINT

The above-captioned Plaintiff hospitals (collectively, the "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (the "APA"), and other authorities. The Hospitals challenge their Medicare inpatient hospital payments for Federal Fiscal Year ("FFY") 2019 as being unlawfully understated because the Secretary calculated them using a "standardized amount" that was invalidly low because of an embedded error from the Secretary's original implementation of the Medicare Hospital Inpatient Prospective Payment System ("IPPS") in FFY 1984. The Hospitals seek reversal of a final determination of the Secretary finding that jurisdiction over the Hospitals' challenges was stripped by a narrow set

of provisions that preclude review of challenges to particular adjustments to FFYs 1984 and 1985 IPPS payment rates meant to achieve budget neutrality in those years (the "Budget Neutrality Preclusion Provisions"[1]). The Hospitals are challenging neither those budget neutrality adjustments nor their FFYs 1984 or 1985 IPPS payments, so the Budget Neutrality Preclusion Provisions do not apply and the dismissal of their appeals must be reversed.

2.     "Standardized amounts" are the fundamental methodological building block that the Secretary uses to calculate IPPS payments. The Medicare Act provisions implementing IPPS expressly required the Secretary to base his calculation of the original standardized amounts on the average "costs per discharge" from a base year. Instead of following this non-discretionary directive, the Secretary violated the statute and acted *ultra vires* by including patient *transfers* in his "costs per discharge" calculation. This error caused an understatement of the original IPPS standardized amounts, and the error was embedded into the standardized amounts going forward because the Secretary calculates the standardized amount for each FFY by starting with and updating the prior year's standardized amount. Although fully aware of his error in calculating the FFY 1984 standardized amounts, and the carry-forward effect of that error, the Secretary has refused to correct for that error in subsequent IPPS rulemakings setting the standardized amounts, including for FFY 2019.

3.     Many of these Hospitals have pursued this substantive issue by filing administrative appeals with the Provider Reimbursement Review Board ("PRRB" or "Board") dating back as far as 2005. Yet despite the passage of over 15 years, no administrative body or court has reached a decision on—or even addressed—the merits of the Hospitals' claims.

---

[1] As described in more detail below, the Budget Neutrality Preclusion Provisions comprise 42 U.S.C. §§ 1395ww(d)(7) and 1395oo(g)(2), as well as the Secretary's implementing regulation at 42 C.F.R. § 405.1804.

4.      Before 2013, the Secretary took the position that hospitals could not challenge their Medicare reimbursements for open cost years based on alleged errors in "predicate facts"—factual determinations that affect payments for open costs years but which were made in prior, closed cost years. The D.C. Circuit rejected this position in *Kaiser Foundation Hospital v. Sebelius*, holding that Medicare regulations permit "modification of predicate facts in closed years provided the change will only impact the total reimbursement determination in open years." 708 F.3d 226, 232-33 (D.C. Cir. 2013).

5.      In response to *Kaiser*, the Secretary revised one of its regulations in an attempt to remove the existing statutory jurisdiction for challenges to underpayments in current years under appeal caused by predicate facts errors that arose more than three years in the past. Based on the revised regulation, the PRRB dismissed appeals that had been filed by many of the Hospitals raising the same predicate fact error presented here, but for earlier FFYs. In 2018, the D.C. Circuit reversed the dismissals, holding that the revised regulation did not preclude jurisdiction over the type of PRRB appeals at issue in that case and here. *See Saint Francis Med. Ctr. v. Azar* ("*Saint Francis I*"), 894 F.3d 290, 297 (D.C. Cir. 2018).

6.      Pursuant to 42 U.S.C. § 1395oo(a) and (b), between November 2018 and February 2019, the Hospitals timely appealed to the PRRB the Secretary's determination in his IPPS Final Rule of the standardized amount for their open year FFY 2019. In August 2020, the Hospitals asked the PRRB to grant expedited judicial review ("EJR") using the process Congress enacted to allow providers to bypass administrative adjudication and proceed directly to court where, as here, the PRRB lacks the authority to decide the legal issue presented (the PRRB is required to follow the Secretary's final rules under 42 C.F.R. § 405.1867). In response to the EJR requests, the PRRB requested additional briefing on, *inter alia*, whether the Budget Neutrality Preclusion Provisions

stripped the PRRB of jurisdiction of these otherwise jurisdictionally sound administrative appeals. The Hospitals explained that the preclusion provisions do not apply facially or otherwise. Nearly a year later, the PRRB denied the EJR requests on the grounds that it needed additional information, and it asked the parties a number of multi-part questions regarding its jurisdiction and other issues. Over a year after the Hospitals responded to the PRRB's additional questions, on April 6, 2023, the Board dismissed the Hospitals' administrative appeals, holding *for the first time* in any administrative appeal raising this substantive issue that the Budget Neutrality Preclusion Provisions strip it of jurisdiction over the Hospitals' claims.

7.      Because the Budget Neutrality Preclusion Provisions do not apply to the Hospitals' claims, facially or otherwise, the Hospitals seek an order setting aside the jurisdictional dismissal of their administrative appeals. Where an administrative decision denying jurisdiction is reversed, the next step often is to remand the matter to the agency for a decision on the merits of the underlying dispute. A remand would be futile here, however, because the PRRB lacks authority to decide the validity of the standardized amount set out in the Secretary's FFY 2019 IPPS Final Rule. Moreover, this court can proceed directly to review the Secretary's *ultra vires* conduct, and to grant mandamus relief.

8.      Based on the foregoing, the Hospitals respectfully ask that the Court, *inter alia*, set aside the PRRB's jurisdictional dismissal, declare that the FFY 2019 standardized amount is unlawfully low, and order the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments to remove the embedded effect on the FFY 2019 standardized amount of his *ultra vires* error in calculating the original FFY 1984 standardized amounts.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§ 1331 (federal question), 1361 (mandamus), and 1651 (all writs).

10.     Venue lies in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391.

## PARTIES

11.     At all times relevant to this action, the Hospitals qualified as participating, general acute-care hospital-providers under the Medicare program. During the relevant period under appeal, each of the Hospitals was owned by one of the following healthcare systems: LifePoint Health, Inc. d/b/a LifePoint Health; Ardent Health Services, Inc.; CHSPSC, LLC d/b/a Community Health Systems; Quorum Health; and Archbold Medical Center, Inc. The Hospitals with their Medicare provider numbers are set forth in Exhibit 1, hereto, which contains the "Schedules of Providers" from the underlying administrative appeals.[2]

12.     Defendant Xavier Becerra, Secretary of HHS, who is the federal official responsible for administration of the Medicare program, has delegated that responsibility to the Centers for Medicare & Medicaid Services ("CMS").[3]

---

[2] Some of the Hospitals have been known by various names over the years. The Schedules of Providers and the case caption above generally list the Hospitals by their "dba" only, but the Hospitals can be identified definitively by their Medicare provider numbers listed in Exhibit 1.

[3] Before June 14, 2001, CMS was known as the Health Care Financing Administration. In this Complaint, the Hospitals refer to the agency as CMS even for events arising before June 14, 2001.

## LEGAL AND REGULATORY BACKGROUND

**A.     General Background of the Medicare Program**

13.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395 *et seq.* The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977). The Secretary, the federal official responsible for administering the Medicare program, has delegated that responsibility to CMS, an agency within the Department of Health & Human Services, and CMS's contractors. 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

14.     The Medicare Act requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ." 42 U.S.C. § 1395hh(a)(2). Thus, the Medicare Act prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary through notice-and-comment rulemaking. In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . . , such provision shall be treated as a proposed regulation and shall not take effect." 42 U.S.C. § 1395hh(a)(4); *see also Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019).

15.     This case involves Part A of the Medicare program, which provides for coverage and payment for, among other things, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c *et seq*. Part A services are furnished to Medicare beneficiaries by "providers" of services—including the Hospitals—that have entered into written provider agreements with the

Secretary, under 42 U.S.C. § 1395cc, to furnish inpatient and outpatient hospital services to Medicare beneficiaries. CMS pays providers participating in Part A of the Medicare program through Medicare Administrative Contractors ("MACs"), which are agents of the Secretary.

**B.    Implementation of IPPS**

16.    Effective with the start of FFY 1984 on October 1, 1983, Congress significantly changed how Medicare pays acute care hospitals for inpatient hospital operating costs by enacting statutes requiring CMS to create and implement a Medicare hospital inpatient prospective payment system, commonly known as "IPPS."

17.    Previously, Medicare reimbursed hospitals for the operating costs related to providing inpatient hospital services to Medicare beneficiaries based on their "reasonable costs" of delivering that care. In general, under the "reasonable cost" system, the more costs that a hospital incurred, the more Medicare payment it received.

18.    Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by a particular hospital. Rather, they are based on predetermined, nationally applicable rates, subject to certain payment adjustments, thus incentivizing hospitals to reduce costs. 42 U.S.C. § 1395ww(d)(1)-(5); 42 C.F.R. Part 412.

**C.    How IPPS Payments Are Calculated**

19.    The fundamental building block for IPPS payments is the base payment rate referred to as the "standardized amount." Stated simply, IPPS payments are calculated by multiplying the applicable standardized amount by certain percentage adjustments based on the severity of the patient's diagnosis—as classified into one of many Medicare Severity Diagnosis Related Groups—and other factors. 42 U.S.C. § 1395ww(d)(1)-(2). Although the final amount of

a given IPPS payment depends on a variety of factors, the applicable standardized amount is always the starting point.

**D.      Statutory Requirements for Calculating the Inaugural IPPS Standardized Amounts**

20.      The Medicare Act provisions creating IPPS required the Secretary to follow a specific, multi-step process for calculating the inaugural standardized amounts. *See* 42 U.S.C. § 1395ww(d)(2)(A)-(F).

21.      The very first step required the Secretary to "determine the allowable *operating costs per discharge* of inpatient hospital services for [each] hospital for the most recent cost reporting period for which data are available." *Id.* § 1395ww(d)(2)(A) (emphasis added). This required "costs per discharge" figure served as the foundational component of the inaugural IPPS standardized amounts.

22.      The second step required the Secretary to update the "costs per discharge" figures for inflation from the base year (*i.e.*, the "most recent cost reporting period for which data are available") to FFY 1984. *Id.* § 1395ww(d)(2)(B).

23.      The third step required the Secretary to "standardize" the updated amounts to remove the effect of certain variations among hospitals (*e.g.*, indirect medical education costs, average wage levels, and case mixes). *Id.* § 1395ww(d)(2)(C).

24.      The statute then required the Secretary to group these figures to compute separate average standardized amounts for urban and rural categories for each of nine regions of the country. *Id.* § 1395ww(d)(2)(D).[4]

---

[4] Starting in FFY 1995, IPPS used only a single standardized amount as the starting point for IPPS payments to all providers.

25.     Next, the statute required the Secretary to apply certain percentage adjustments to these average standardized amounts to account for certain issues, *e.g.*, a reduction of the standardized amounts to fund estimated additional payments for outlier cases. *Id.* § 1395ww(d)(2)(E).

26.     Finally, the statute required the Secretary to adjust the standardized amounts as necessary to implement the statute's budget neutrality requirement—that aggregate reimbursements under IPPS would be no greater or less than the aggregate payments that would have been made under the prior reasonable cost system. *Id.* §§ 1395ww(d)(2)(F), 1395ww(e)(1)(B).

**E.     The Secretary Invalidly Calculated the Inaugural IPPS Standardized Amounts by Failing to Account for Patient *Transfers* When Calculating the Required "Costs per *Discharge*" Figure, and He Has Never Corrected His Error**

27.     The Secretary acknowledged that the Medicare Act required a specific, multi-step process for calculating the inaugural IPPS standardized amounts. In his Interim Final Rule implementing IPPS, the Secretary stated: "The methodology for arriving at the appropriate [prospective] rate structure is essentially prescribed in the Act in section 1886(d)(2) [42 U.S.C. § 1395ww(d)(2)]. It requires that certain base period cost data be developed and modified in several specified ways (*i.e.*, inflated, standardized, grouped, and adjusted)," resulting in the standardized amounts. FFY 1984 IPPS Interim Final Rule, 48 Fed. Reg. 39,752, 39,763 (September 1, 1983).

28.     Yet in an error that the Secretary to this day has never purported to correct, the Secretary invalidly calculated the average "costs per discharge" figure required by the non-discretionary first step of the process. The root of the Secretary's error was his failure to account for patient *transfers* in his calculation of "average costs per *discharge*." This error caused

the resulting IPPS payments to be understated in FFY 1984 and every FFY thereafter because the Secretary calculates standardized amounts for each new FFY by updating and applying a percentage adjustment to the prior FFY's standardized amount(s).

29.     As stated above, the first step of the standardized amount calculation required the Secretary to calculate the "allowable operating costs *per discharge* of inpatient hospital services for . . . the most recent cost reporting period for which data are available," which was 1981. 42 U.S.C. § 1395ww(d)(2)(A) (emphasis added); *see also* 48 Fed. Reg. at 39,763. When the Secretary calculated the "costs per discharge," he violated the clear statutory requirement by failing to remove or adjust for patient *transfers* that were included in the 1981 base-year data. *See id.* at 39,763-64. Thus, for rate-setting purposes, the Secretary effectively treated *transfers* as if they were *discharges*; and instead of calculating the average costs per discharge as required by statute, the Secretary calculated the average costs per discharge *or transfer*. This caused the standardized amounts to be understated because the average cost for the transfer of a patient from one hospital to another for more hospital care was lower than the average cost a hospital would have incurred if it kept the patient from admission until final discharge from hospital care.

30.     Not only did this rate-setting methodology fail to calculate the "allowable operating *costs per discharge*" as the statute required, 42 U.S.C. § 1395ww(d)(2)(A) (emphasis added), it also directly conflicted with the clear distinction between transfers and discharges that the Secretary recognized and implemented for *payment* purposes under IPPS. *See* FFY 1984 IPPS Interim Final Rule, 48 Fed. Reg. at 39,759, 39,763. In fact, as part of implementing IPPS, the Secretary introduced new formal definitions for the terms "discharge" and "transfer." *See id.* at 39,759. For IPPS, the Secretary defined a "discharge" as a "formal[] release[] from the hospital" and expressly excluded from that definition transfer "cases where a patient is transferred to another

hospital paid under the prospective payment system." *Id*. Based on this distinction, the Secretary implemented a payment policy by which IPPS hospitals would generally be paid less for patients transferred to another hospital for more hospital care than for discharged patients because of the lower costs hospitals incurred on transfer cases. *Id.*

31.     The Secretary did not rationally explain this inconsistent treatment of transfers for rate-setting and payment purposes. Rather, in the FFY 1984 IPPS Final Rule, the Secretary acknowledged that "transfers" are different from "discharges," but asserted—without any supporting explanation or data—that he "would expect any discrepancy between the 'old' and 'new' definition of discharge to have no significant effect on the rates." 49 Fed. Reg. 234, 245-46 (Jan. 3, 1984). Nevertheless, the Secretary acknowledged the lower costs associated with transfers to justify paying transfers less than discharges under IPPS. *See* FFY 1984 IPPS Interim Final Rule, 48 Fed. Reg. at 39,759 ("The transferring hospital, generally providing a limited amount of treatment to the transferred patient, is not entitled to payment at the full prospective rate."). Thus, the Secretary's treatment of transfers as discharges unlawfully and irrationally lowered the "costs per discharge" figure, the resulting standardized amounts, and all IPPS payments, from 1984 until today.

32.     Effectively acknowledging his error, the Secretary correctly reversed course on his treatment of transfers when he implemented the prospective payment system for *capital* costs ("Capital PPS") in FFY 1992. In his Proposed Rule for Capital PPS, the Secretary stated his intention to include transfers in the "costs per discharge" calculation for the Capital PPS standardized amounts, just as he had done when implementing IPPS. FFY 1992 Capital PPS Proposed Rule, 56 Fed. Reg. 8,476, 8,487 (Feb. 28, 1991). But unlike with IPPS, in the Capital PPS Final Rule, the Secretary acknowledged that counting transfers as discharges was improper

and would cause an understatement of the standardized amounts. FFY 1992 Capital PPS Final Rule, 56 Fed. Reg. 43,358, 43,383, 43,386-97 (Aug. 30, 1991). The Secretary therefore applied a "correction factor" that adjusted for transfers, resulting in an *increase* in the costs-per-discharge figure and the resulting Capital PPS standardized amounts. *Id.* at 43,461, 43,368.

33.     The logic underlying the Secretary's decision to adjust for transfers in the Capital PPS rates also applied directly to IPPS because both involved transition to a "prospective payment" system from a "reasonable costs" payment system. Yet, the Secretary did not at the time he adopted Capital PPS (or at any other time) purport to correct for his failure to make a similar adjustment to the unlawful and incorrect FFY 1984 costs-per-discharge calculation made for IPPS standardized amounts, which carried forward to every FFY thereafter.

**F.     The Incorrectly Low FFY 1984 Standardized Amounts, and the Secretary's Failure to Correct His Original Error, Detrimentally Affected IPPS Payments in FFY 2019**

34.     The original understatement of average costs per discharge affected not only the FFY 1984 standardized amounts; standardized amounts for all subsequent FFYs also were understated. This is because the Secretary calculates the IPPS standardized amount(s) for a given FFY by adjusting the standardized amount(s) from the previous FFY, tracing back to the original FFY 1984 standardized amounts. *See* 42 U.S.C. § 1395ww(d)(3)(A)-(C); *see also Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011) ("CMS does not calculate the standardized amount from scratch each year. Instead, following Congress's directive, it calculated the standardized amount for a base year and has since carried that figure forward, updating it annually for inflation.").

35.     As the D.C. Circuit explained in *Saint Francis I*:

Prospective payment amounts are determined annually, under a statutory formula that depends in part on base rates known as "standardized amounts." *See* 42 U.S.C. § 1395ww(d)(2)(C). In turn, the standardized amounts depend in part on the

"allowable operating costs per discharge of inpatient hospital services." *See id*. § 1395ww(d)(2)(A). Although prospective payment amounts are adjusted over time in various ways, the standardized amounts themselves are not. *See id*. § 1395ww(d)(3). Those amounts were calculated in 1983, based on hospitals' cost-reporting data from 1981. *See* Prospective Payments for Medicare Inpatient Hospital Services, 48 Fed. Reg. 39,752, 39,763-67 (Sept. 1, 1983). *To this day, therefore, Medicare payments for inpatient services depend in part on factual determinations derived from 1981 data and embedded in 1983 calculations, including the calculation of "allowable operating costs per discharge."*

894 F.3d at 291 (emphasis added). Thus, the Secretary "calculates hospitals' Medicare reimbursements by employing a formula predicated on statistics for hospital discharges in 1981." *Id*. at 297 (Kavanaugh, J, concurring).

36. When promulgating the FFY 2019 IPPS Final Rule, the Secretary knew that (1) the original FFY 1984 standardized amounts had been calculated without excluding or applying any adjustment for the impact of transfers and (2) the standardized amount for FFY 2019 was based on the original FFY 1984 standardized amounts. The Secretary knew this because in the FFY 2019 IPPS Final Rule, the standardized amount was increased by an "update factor" applied to the previous FFYs' standardized amounts going back to FFY 1984. *See* FFY 2019 IPPS Final Rule, 83 Fed. Reg. 41,144, 41,713 (Aug. 17, 2018) ("[T]he national standardized amount is based on per discharge averages of adjusted hospital costs from a base period (section 1886(d)(2)(A) of the Act [*i.e*., 42 U.S.C. § 1395ww(d)(2)(A)]), updated and otherwise adjusted in accordance with the provisions of section 1886(d) of the Act [*i.e*., 42 U.S.C. § 1395ww(d)]."). The Secretary also knew these facts, of course, because in *Saint Francis I* he had litigated a case involving the same error in calculating the original standardized amounts for FFY 1984.

37. Despite his knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, the Secretary did nothing to correct for the impact of that error when setting the standardized amount in the FFY 2019 IPPS Final Rule. *See Saint*

*Francis I*, 894 F.3d at 298 (Kavanaugh, J., concurring) ("Indeed, it would seem to be the very definition of arbitrary and capricious for HHS to knowingly use false facts when calculating hospital reimbursements.").

**G.    The Medicare Appeals Process and Expedited Judicial Review**

38.    The Medicare Act allows a provider that is dissatisfied with a "final determination" as to the amount of its IPPS payments for an open FFY to appeal to the PRRB if the provider meets the requirements in 42 U.S.C. § 1395oo(a), including that the "amount in controversy is $10,000 or more," and "such provider files a request for a hearing within . . . 180 days after notice of the Secretary's final determination." 42 U.S.C. § 1395oo(a)(1)(A)(ii), (2), (3). The publication of IPPS rates in the Federal Register, including the standardized amount(s), constitutes a "final determination" that may be appealed to the PRRB under 42 U.S.C. § 1395oo(a). *See, e.g.*, *Wash. Hosp. Ctr. v. Bowen*, 795 F.2d 139, 146 (D.C. Cir. 1986). A group of providers may bring such an appeal if the matter in controversy involves a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more. 42 U.S.C. § 1395oo(b).

39.    The Medicare Act includes certain specifically delineated carve-outs to a provider's right to appeal. At issue in this case, the Budget Neutrality Preclusion Provisions preclude administrative and judicial review of "the determination of the requirement, or the proportional amount, of any adjustment effected pursuant to subsection (e)(1)," that is, any budget neutrality adjustment to the standardized amounts for FFYs 1984 or 1985. *See* 42 U.S.C. § 1395ww(d)(7).[5]

---

[5] In addition to 42 U.S.C. § 1395ww(d)(7), the Budget Neutrality Preclusion Provisions include 42 U.S.C. § 1395oo(g)(2), which provides that the determinations described in § 1395ww(d)(7) "shall not be reviewed by the Board or by any court," and the Secretary's regulation implementing these provisions, 42 C.F.R. § 405.1804.

40.    Although the PRRB has broad jurisdiction to consider providers' challenges to IPPS payment determinations, it lacks the authority to adjudicate the validity of the Secretary's regulations and CMS Rulings. 42 C.F.R. § 405.1867. Thus, when a provider's appeal satisfies the jurisdictional requirements for a PRRB hearing, the provider may request that the PRRB determine whether it has the authority to decide the question of law or regulations relevant to the appeal. 42 U.S.C. § 1395oo(f)(l). If the PRRB determines that the legal issues raised are outside the scope of its authority, it must certify the appeal for "expedited judicial review" or "EJR." *Id.* In that event, the provider has exhausted its administrative remedies, the Secretary's payment determination is final, and the provider may commence a civil action for judicial review of the final payment determination of the Secretary. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

41.    A provider also has the right to judicial review of any other "final decision" of the PRRB—or any reversal, affirmance, or modification of such final decision by the Secretary (acting through the CMS Administrator)—by filing a civil action within 60 days. 42. U.S.C. § 1395oo(f)(1). A dismissal by the PRRB for lack of jurisdiction is a final determination that is subject to review by the Secretary and judicial review. *See Auburn Reg'l Med. Ctr. v. Sebelius*, 642 F.3d 1145, 1148 (D.C. Cir. 2011), *reversed on other grounds*, 568 U.S. 145 (2013).

42.    In any of the foregoing court actions, and here, the Secretary is the proper defendant. *See* 42 C.F.R. § 421.5(b). Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. § 1395oo(f). In addition, under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

43.    Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary

duty to honor that right. *In re Medicare Reimbursement Litig.*, 414 F.3d 7 (D.C. Cir. 2005); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

## STATEMENT OF FACTS SPECIFIC TO THESE HOSPITALS

**A.**    ***Kaiser*, *Saint Francis I*, and the Hospitals' 15+ Year Effort to Obtain Judicial Review of Their Substantive Claims**

44.    As the D.C. Circuit noted in *Saint Francis I*, many of the Hospitals have "pursued this issue in various appeals to the PRRB filed as early as 2005." 894 F.3d at 293. Yet despite pursuing this issue for over 15 years—at significant cost in time and resources—the Hospitals have not yet received any substantive decision from the PRRB, the CMS Administrator, or any court.

45.    Leading up to 2013, the Secretary took the position that hospitals could not challenge their Medicare reimbursements for open cost years based on alleged errors in "predicate facts"—factual determinations that affect the challenged payments for open costs years but were made in prior, closed cost years. *See id.* The D.C. Circuit rejected this position in *Kaiser Foundation Hospital v. Sebelius*, holding that Medicare regulations permit "modification of predicate facts in closed years provided the change will only impact the total reimbursement determination in open years." 708 F.3d 226, 232-33 (D.C. Cir. 2013).

46.    In response to *Kaiser*, the Secretary revised 42 C.F.R. § 405.1885, the regulation governing requests for the "reopening" of a payment decision (the "2013 Reopening Revision"), in an attempt to foreclose the correction of predicate facts more than three years after those facts were established or first used. 78 Fed. Reg. 74,826, 75,162 (Dec. 10, 2013) (final rule). Based on the 2013 Reopening Revision, the PRRB dismissed appeals filed by many of the Hospitals for earlier cost years not at issue here. *See Saint Francis I*, 894 F.3d at 293. In 2018, the D.C. Circuit reversed the dismissals, holding that the 2013 Reopening Revision applied only to administrative reopenings, not to PRRB appeals like the ones brought in *Saint Francis I* and by the Hospitals

here. *Id.* at 297. Thus, *Saint Francis I* and *Kaiser* confirm that the Hospitals are permitted to seek correction of erroneous facts from a closed cost year to ensure that their properly appealed FFY 2019 IPPS payments are correct.

47.     The Hospitals' appeals at issue in *Saint Francis I* were remanded to the PRRB, where they remain pending. The PRRB appeals at issue here were filed to challenge reimbursements in a later cost year. As described below, the Hospitals have faced more delays and roadblocks to the review and resolution of these appeals. Most recently, the PRRB has for the first time taken the position that the Budget Neutrality Preclusion Provisions strip it of jurisdiction to consider any appeal based on a predicate fact error arising from the standardized amounts from FFYs 1984 and 1985.

**B.      Administrative Procedural Background for These PRRB Appeals**

48.     This action arises from five PRRB Common Issue Related Party Group Appeals: PRRB Case Nos. 19-1723GC, 19-1735GC, 19-1763GC, 19-0233GC, and 19-1628GC (collectively, the "Group Appeals"). The Group Appeals challenge the Hospitals' respective IPPS payments for FFY 2019 on the grounds that those payments are improperly understated because they are based on an unlawfully low standardized amount.

49.     In each of the Group Appeals, the Hospitals timely appealed the FFY 2019 IPPS Final Rule, and the amount in controversy far exceeded the $50,000 minimum threshold. *See* 42 U.S.C. § 1395oo(a), (b). Notably, the MACs have conceded that the Group Appeals meet these core jurisdictional criteria.

50.     On August 10, 2020, the Hospitals in each of the Group Appeals asked the PRRB to grant EJR on the validity of the standardized amount set forth in the IPPS Final Rule for FFY

41

2019 because, although the PRRB has jurisdiction over the Group Appeals, it lacks the authority to review the validity of the standardized amount governing IPPS payments for FFY 2019.

51.     In November 2020, at the request of the PRRB, the Hospitals provided significant supplemental briefing on the issues of jurisdiction and EJR, including on the issue of the PRRB's jurisdiction to review the challenges in the Group Appeals. The Hospitals explained that the Budget Neutrality Preclusion Provisions—which apply to only a narrow, specifically defined category of challenges to the budget neutrality adjustments for FFYs 1984 and 1985—on their face do not apply the Hospitals' challenges to the FFY 2019 standardized amount. The Hospitals also demonstrated that the Budget Neutrality Preclusion Provisions do not otherwise apply to these Group Appeals, because, *inter alia*, the Hospitals' standardized-amount challenges are not inextricably intertwined with the narrow issues for which jurisdiction is precluded. Finally, the Hospitals explained that if the Secretary had appropriately adjusted for transfers in FFY 1984, the resulting increase to the costs-per-discharge figure would not have been negated by the FFY 1984 budget neutrality adjustment.

52.     Nearly a year later, in a letter dated October 27, 2021, the PRRB denied the EJR requests on the basis of inadequate information, and it instructed the parties to respond to 15 pages of additional questions that it described as addressing "both whether EJR is appropriate as well as whether the Board has jurisdiction."

53.     By a letter dated November 12, 2021, the Hospitals asked the CMS Administrator to review the jurisdictional component of the PRRB's October 27, 2021 decision denying the Hospitals' EJR requests. The Hospitals asked the CMS Administrator to find that the PRRB has jurisdiction over the Group Appeals and order the PRRB to determine whether it has the legal authority to decide the single issue under appeal in the Group Appeals. By a letter dated

December 22, 2021, the CMS Administrator declined to review the PRRB's October 27, 2021 decision.

54.     On February 5, 2022, and again on March 18, 2022, the Hospitals timely provided responses to the PRRB's October 27, 2021 "Request for Information" letter. These responses reiterated that the PRRB has jurisdiction but lacks the authority to decide the legal issue presented by the Hospitals' claims, and they explained that much of the requested information was not relevant to the questions of EJR or jurisdiction. *Id.*

55.     Thereafter, in April 2022, another group of hospitals that had joined these Hospitals' August 2020 EJR requests submitted a second round of EJR requests to the PRRB. By letter dated April 25, 2022, the PRRB stated that it would not rule on those second EJR requests within 30 days (as required by 42 U.S.C. § 1395oo(f)(1)), purporting to "stay" its deadline to respond to the EJR requests indefinitely. On July 7, 2022, those hospitals filed *Saint Francis Medical Center et al. v. Becerra*, Cause No. 1:22-cv-1960-RCL, in the United States District Court for the District of Columbia ("*Saint Francis II*"), following the PRRB's failure to determine their second EJR requests within the 30-day statutory deadline. As of the date of this filing, *Saint Francis II* remains pending at the District Court.

56.     On April 6, 2023—more than a year after the Hospitals responded to the Board's October 27, 2021 "Request for Information" letter; more than two and a half years after the Hospitals requested EJR in these Group Appeals; and more than 15 years after the substantive challenge in the Group Appeals was first raised—the PRRB held for the first time that the Budget Neutrality Preclusion Provisions strip its jurisdiction over the Hospitals' challenges to current-year payments based on the Secretary's improper treatment of transfers in calculating the average "costs per discharge" in the inaugural IPPS standardized amounts for FFY 1984.

57.     The PRRB did not contend that the Hospitals' claims fall within the narrow category of challenges for which review is precluded by the Budget Neutrality Preclusion Provisions. Nor could it, because the clear terms of those provisions preclude review of only challenges to the FFY 1984 and 1985 budget neutrality adjustments, which the Hospitals did not assert. Instead, the PRRB held that the Hospitals' claims for understatement of the FFY 2019 standardized amount are "inextricably intertwined" with the FFY 1984 and 1985 budget neutrality adjustments. Not only was this decision based on new concepts never before raised by the PRRB or addressed by the parties (for example, that the FFY 1984 and 1985 budget neutrality adjustments had the effect of "fixing the pie" for those years), but it also failed to address the many reasons set out in the Hospitals' prior briefing demonstrating that the Hospitals' claims do not fall within— and are not inextricably intertwined with—the Budget Neutrality Preclusion Provisions. For example, *inter alia*, the PRRB failed to address the strong presumption in favor of judicial review of administrative actions, the fact that the challenged "costs per discharge" calculation was a wholly separate step and governed by a separate statutory provision than the budget neutrality adjustments for which review was precluded, and the fact that, if the Secretary had appropriately accounted for transfers in FFY 1984, the final original standardized amounts would have been higher without any change to the budget neutrality adjustment factor.

58.     The Hospitals now file this civil action within 60 days of the PRRB's dismissal decision, which—because it has not been reviewed by the CMS Administrator—has become the final determination of the Secretary for purposes of judicial review. As shown below, the Secretary improperly applied the Budget Neutrality Preclusion Provisions to these Group Appeals, and its dismissal decision must be reversed and/or set aside.

59.     Where an administrative decision denying jurisdiction is reversed, the reviewing court often remands the matter back to the agency for a decision on the merits of the dispute. Remand to submit the Hospitals' claims to the PRRB would be futile here, however, because the PRRB unquestionably lacks the authority to decide the validity of the FFY 2019 standardized amount as set out in the Secretary's IPPS Final Rule. *See* 42 C.F.R. § 405.1867; *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 250 (D.D.C. 2015). Accordingly, if the Court remanded the Hospitals' Group Appeals to the PRRB (via the Secretary), then the PRRB would be required to order "expedited judicial review."[6] Moreover, because the Hospitals seek review and mandamus relief for *ultra vires* actions by the Secretary, this Court can proceed directly to the merits of the Hospitals' claims.

## THE ADMINISTRATIVE PROCEDURE ACT

60.     Under 42 U.S.C. § 1395oo(f)(1), review of a final decision of the Secretary "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA, 5 U.S.C. §§ 551, *et seq*.

61.     Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." *Id.* § 706(2).

---

[6] Although the PRRB has suggested that there may be factual issues requiring further development, the only issues it has identified are relevant only to the *amount* of the underpayments at issue, which would be calculated *after* a court concludes the FFY 2019 standardized amount was unlawfully understated and remands this matter to the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments.

62.     The Secretary's decision, as set forth in the PRRB's dismissal letter, is unlawful and should be set aside for at least the reasons set forth below.

**COUNT I**
**Judicial Review Under the Medicare Act and the APA**
**(Secretary's Actions Are Contrary to Statutory Law Under the Medicare Act**
**and *Ultra Vires*)**

63.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

64.     The APA prohibits agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

65.     The Secretary's actions adopting a flawed standardized amount for FFY 2019, without correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are contrary to the Medicare Act and *ultra vires*. Accordingly, the Secretary's resulting FFY 2019 IPPS payment determinations relating to the Hospitals must be recalculated because they violate the plain meaning of the statute. The Medicare Act unambiguously imposed a non-discretionary requirement that the Secretary calculate the original standardized amounts for FFY 1984 based on the "allowable operating costs per discharge of inpatient hospital services." 42 U.S.C. § 1395ww(d)(2)(A). The Secretary violated this clear directive—and thus acted *ultra vires*—by calculating the average costs per discharge *or transfer* instead of the required "costs per discharge" figure.

66.     Treating transfers as discharges when calculating the average costs per discharge and standardized amounts in the initial IPPS rulemaking, effective for FFY 1984 IPPS payments, also violated the clear purpose of the Medicare IPPS statute. Congress required CMS to set initial IPPS payment rates for FFY 1984 based upon prior year "allowable operating costs per discharge"

so that total IPPS payments to hospitals for FFY 1984 would be level with what they would have been under the "reasonable cost" system for FFY 1984, and to adjust the rates from there for subsequent FFYs. By treating transfers as discharges, however, CMS violated the clear purpose of Congress and instead set initial IPPS payment rates for FFY 1984 that were too low and have remained too low every FFY thereafter, including FFY 2019.

67.     The Secretary's actions dismissing the Hospitals' properly-filed Group Appeals based on the Budget Neutrality Preclusion Provisions are also contrary to the Medicare Act. The Hospitals in these Group Appeals are challenging the FFY 2019 standardized amount as understated because of the Secretary's improper treatment of transfers in his "costs per discharge" calculation in the required first step of the statutory methodology for calculating the original standardized amounts in FFY 1984. The Hospitals' right to bring these challenges—and jurisdiction for the PRRB, the Secretary, and the courts to review them—is clearly conferred by the Medicare Act, 42 U.S.C. §§ 1395oo(a), (b).

68.     By their plain meaning and manifest intent, the Budget Neutrality Preclusion Provisions do not apply to the Hospitals' claims in this case. The Budget Neutrality Preclusion Provisions bar administrative and judicial review of only a narrow, specifically defined category of challenges to the Secretary's determination of the requirement, or the proportional amount, of any budget neutrality adjustment effected pursuant to 42 U.S.C. § 1395ww(e)(1) in FFYs 1984 and 1985. The Hospitals' Group Appeals do not make any such challenges (and are not challenging their IPPS payments for FFYs 1984 or 1985), and the standardized-amount challenges they are making are logically and legally distinct from the matters for which review is precluded.

69.     The Budget Neutrality Preclusion Provisions also do not, and could not, preclude review of the Secretary's *ultra vires* actions.

70.     Accordingly, the PRRB's reliance on the Budget Neutrality Preclusion Provisions to dismiss the Hospitals' properly-filed Group Appeals was contrary to law, in excess of statutory limitations, and short of statutory right.

## COUNT II
### Judicial Review Under the Medicare Act and the APA
**(Secretary's Actions Are Contrary to Statutory Law Because the Secretary Failed to Observe Required Procedure Under the APA and the Medicare Act)**

71.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

72.     The Secretary's actions adopting a flawed standardized amount for FFY 2019, without correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are contrary to law because the Secretary failed to comply with applicable procedural rulemaking requirements in the APA and the Medicare Act in many ways, including by failing to explain adequately the decisions not to correct for the understated standardized amounts.

73.     When promulgating the FFY 2019 IPPS Final Rule, CMS knew that (a) the original FFY 1984 standardized amounts had been calculated without excluding or otherwise adjusting for the impact of transfers and (b) the standardized amount for FFY 2019 was based on the original FFY 1984 standardized amounts.

74.     Despite knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, the Secretary did nothing to correct for the impact of that error when setting the standardized amount in the FFY 2019 IPPS Final Rule. Thus, the Secretary's rulemaking setting the standardized amount for FFY 2019 was contrary to law and procedurally invalid because, among other matters, the Secretary failed to adequately explain his actions or point to any data or analysis to support his approach.

## COUNT III
### Judicial Review Under the Medicare Act and the APA
**(Secretary's Actions Are Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance with Law, and Unsupported by Substantial Evidence in Violation of the APA and the Medicare Act)**

75.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

76.     The APA requires a reviewing court to hold unlawful and set aside agency action, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

77.     The Secretary's actions adopting a flawed standardized amount for FFY 2019, without correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and unsupported by substantial evidence.

78.     Despite knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, the Secretary did nothing to correct for the impact of that error when setting the standardized amount in the FFY 2019 IPPS Final Rule. Thus, the Secretary acted in a manner that was arbitrary and capricious, an abuse of his discretion, and unsupported by substantial evidence when setting the standardized amount for FFY 2019. Specifically, the Secretary, *inter alia*, (a) calculated the standardized amounts for FFY 1984 after improperly treating transfers as discharges, (b) accounted for transfers for payment purposes in the FFY 1984 IPPS rulemaking, but not for purposes of determining the costs on which the FFY 1984 standardized amounts were based, and (c) despite knowing of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, failed to correct for the impact of that error when setting the standardized amount in the FFY 2019 IPPS Final Rule.

79.     The Secretary's actions are also arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence because of his failures to (a) consider relevant factors and data which should have been taken into account when setting the standardized amounts, (b) consider alternative methodologies when establishing the standardized amounts, (c) demonstrate a reasonable connection between the standardized amounts and the factors and data considered, and/or (d) rationally explain his actions or point to any data or analysis to support his approach.

80.     In addition, it was arbitrary and capricious and an abuse of discretion for the Secretary not to adjust for transfers when implementing IPPS in FFY 1984, or thereafter, given that he made just such an adjustment in the Capital PPS Final Rule.

81.     The Secretary's actions dismissing the Hospitals' properly-filed Group Appeals based on the Budget Neutrality Preclusion Provisions are also arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and unsupported by substantial evidence. "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015). For that reason, courts apply "a strong presumption that Congress intends judicial review of administrative action." *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1204 (D.C. Cir. 2019). Even where a provision precludes review of certain actions, "the presumption applies to dictate that such a provision be read narrowly." *Id.* This presumption can only be overcome by "clear and convincing evidence" of a specific legislative intent to preclude review of the particular matters at issue. *Abbot Labs. v. Gardner*, 387 U.S. 136, 141 (1967). An agency attempting to apply a statute to preclude jurisdiction "bears a heavy burden in attempting to show that Congress prohibited all judicial review of the agency's compliance with a legislative mandate." *Mach Mining*, 575 U.S. at 486 (quotation marks and

50

brackets omitted). An interpretation that precludes review—even if "plausible"—must be rejected if "the text does not compel it." *Am. Clinical Lab Ass'n*, 931 F.3d at 1205.

82.     The text of the Budget Neutrality Preclusion Provisions does not allow—much less compel—the Secretary's conclusion that jurisdiction is stripped for the otherwise indisputably jurisdictionally proper Group Appeals. Nor are the Hospitals' claims inextricably intertwined with the challenges for which review is precluded under the Budget Neutrality Preclusion Provisions. The Hospitals are challenging the FFY 2019 standardized amount based on a predicate fact error made in the Secretary's "costs per discharge" calculation in the first step of the methodology prescribed by statute for calculating the original standardized amounts. This first step was logically and legally distinct—and governed by a separate statutory provision—from the budget neutrality adjustment called for at the end of the process for establishing the FFY 1984 final payment rates. The Secretary concluded that any challenge to the original standardized amounts would be inextricably intertwined with the budget neutrality adjustment, because that adjustment allegedly had the effect of "fixing the pie," *i.e.*, setting in stone the final adjusted payment rates. This logic, however, would effectively preclude the review of *any challenge* to *any error* in the Secretary's calculation of the original standardized amounts—which sweeping preclusion Congress expressly did not provide for in the Budget Neutrality Preclusion Provisions.

83.     The Secretary's dismissal of the Group Appeals is also based on numerous conclusions not supported by record evidence, including, *inter alia*, that the budget neutrality requirement "fixed the pie" in a way that would not have allowed increased final payment rates to account properly for transfers in FFY 1984. As the Hospitals explained to the PRRB, if the Secretary had appropriately accounted for transfers in calculating the original standardized

amounts, the final payment rates would have increased without any effective change to the FFY 1984 budget neutrality adjustment factor.

84.     The Budget Neutrality Preclusion Provisions also do not, and could not, preclude review of the Secretary's *ultra vires* actions.

85.     The Secretary's attempt to stretch the scope of the Budget Neutrality Preclusion Provisions far beyond their clear terms is invalid and unlawful because it is inconsistent with the strong presumption in favor of review of administrative actions, and it is otherwise arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.

## COUNT IV
### Mandamus
**(The Hospitals' IPPS Payments Are Unlawful and Must be Corrected)**

86.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

87.     Under 28 U.S.C. § 1361, federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

88.     The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment, including, *inter alia*, to reimburse the Hospitals fully in the amounts to which they are entitled under the law. The Secretary violated this non-discretionary duty, and acted *ultra vires*, by setting the FFY 2019 standardized amount without correcting for the understatement caused by his original failure to follow the clear statutory directive to calculate the average costs per discharge in calculating the original IPPS standardized amounts.

89.    The Hospitals are entitled to a writ of mandamus under 28 U.S.C. § 1361 directing the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments after correcting for the effect of the Secretary's failure to exclude or adjust for transfers in calculating the average costs per discharge in his calculation of the original IPPS standardized amounts.

90.    The Budget Neutrality Preclusion Provisions do not apply to mandamus actions. The Budget Neutrality Review Provisions also do not, and could not, preclude review of the Secretary's *ultra vires* actions.

## COUNT V
## All Writs Act

91.    The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

92.    The Secretary violated the Medicare Act and APA by unlawfully calculating the Hospitals' IPPS payments for FFY 2019. Under the All Writs Act and other authority, the Hospitals are entitled to an order requiring the Secretary to make proper IPPS payments to the Hospitals and to pay appropriate interest on the underpayments. *See* 28 U.S.C. § 1651, 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals request:

a.    An order declaring invalid and reversing and/or setting aside the final decision dismissing for lack of jurisdiction the Hospitals' Group Appeals related to the IPPS standardized amount for FFY 2019;

b.    An order declaring that the FFY 2019 standardized amount was improperly understated and the Hospitals are entitled to receive for FFY 2019 the additional Medicare IPPS payments to which they would have been entitled if the Secretary had not acted unlawfully;

c.      An order remanding this action back to the Secretary to (a) remove the effect of the FFY 1984 predicate fact error and determine the proper standardized amount for FFYs 2019, and (b) calculate the amounts owed to the Hospitals and to make prompt payment of any additional amounts due, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d);

d.      In the alternative, issuance of a writ of mandamus directing the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments after correcting for the effect of the Secretary's failure to exclude or adjust for transfers in calculating the average costs per discharge in his calculation of the original standardized amounts, plus interest.

e.      Costs of suit incurred by the Hospitals, including reasonable attorneys' fees; and

f.      Such other relief as the Court may deem just and proper.

Dated June 2, 2023

Respectfully submitted,

 */s/ Stephen A. Calhoun*

Stephen A. Calhoun
 (D.C. Bar # TX047)
Edgar C. Morrison, Jr.
 (D.C. Bar # TX0166)
JACKSON WALKER L.L.P.
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
Tel: (210) 978-7780
Fax: (210) 242-4619
jmorrison@jw.com
scalhoun@jw.com

*Counsel for Plaintiffs*